# CRIMINAL COURT OF BALTIMORE CITY.

Filed January 5, 1917.

STATE OF MARYLAND
VS.
WILLIAM M. SMITH.

*William Pinkney Whyte, Jr.*, Assistant Attorney General, and *Lindsay C. Spencer*, Assistant State's Attorney, for State of Maryland.

*William Curran* for traverser.

SOPER, J.—

The controversy in this case arises over the construction of two acts of the legislature of 1916, supposed to be in conflict, regarding the operation of motor vehicles upon the public highways of the State in the transportation of persons for hire.

The Acts of 1916, Chapter 610, Section 1, provides in substance that it shall be the duty of each owner of a motor vehicle, to be used in the public transportation of persons for hire, operating over certain described public roads and streets, to secure a permit from the Public Service Commission of Maryland to operate over said roads and streets, and to present the same to the Motor Vehicle Commissioner annually at the time prescribed by the law for applications in writing for registration with the Commissioner by owners of all other motor vehicles, and to state in such application, amongst other things, the seating capacity for passengers of the motor vehicle, the route on which it is to be used, the length of the route in miles, the weight of the vehicle and the schedule under which it is to be operated during the ensuing year. Certain annual fees are required to be paid to the Commissioner for certificates of registration issued by him, which fees are regulated by the weight and passenger capacity of the vehicle and the total number of miles to be traveled over the streets and roads by the motor vehicle during the year for which the certificate is issued.

Section 3 provides, among other things, that every such vehicle shall operate only on the route and schedule set forth, which shall not be changed during the year without the permission of the Public Service Commission. Section 4 declares that it shall be the duty of the Commission, upon the application of an owner to operate a

motor vehicle over any specified route, to investigate the feasibility of granting the permit, the number of vehicles to be used, and the rate to be charged, and is empowered to grant or refuse the permit according as it shall appear in its judgment to be beneficial or prejudicial to the public welfare and convenience, and the Commission is further empowered to make rules and regulations to govern the control and operation of the vehicles. Section 5 provides the penalty incurred by any person owning or operating a motor vehicle in violation of the provisions of the act.

The Acts of 1916, Chapter 687 (the General Automobile Law of the State), in Section 141 designates certain fees to be paid to the Commissioner of Motor Vehicles for certificates of registration of motor vehicles issued by him as therein classified. Class F provides for the payment of a fee of "one dollar per horsepower or fraction thereof in the case of all motor vehicles operating for the purpose of transporting persons for hire upon any of the public highways of the State other than motor vehicles operating on fixed schedules, the registration fees of which are fixed by other specific provisions of the law."

Both of these acts were approved by the Governor on the 18th of April, 1916, and both went into effect on July 1st, 1916.

The indictment is in two counts. The first count alleges, in substance, that the defendant, on November 13th, 1916, in the City of Baltimore, being the owner of a motor vehicle used in the public transportation of passengers for hire, and operating over the State roads, and streets and roads of the City of Baltimore, unlawfully did operate the vehicle over certain streets and roads of the city without having theretofore presented to the Motor Vehicle Commissioner within one year prior to said date any permit from the Public Service Commission of Maryland to operate over said roads and streets. The second count charges that the defendant unlawfully operated a motor vehicle used in public transportation of passengers for hire over certain streets and roads of the city without having theretofore within a year prior to said date stated in any application for registration with the Commissioner of Motor Vehicles the

route on which the vehicle was to be used, and the schedule under which it should operate during the ensuing year. The indictment is based on Section 1 of Chapter 610 of the Acts of 1916.

A demurrer was filed to both counts of the indictment on the ground that they do not contain an allegation to the effect that the motor vehicle was being operated upon a definite route and fixed schedule. The argument is that this section was intended to apply only to such motor vehicles used in the public transportation of passengers for hire as should be operated over a definite route and on a fixed schedule; and that consequently the indictment omits to state one of the elements which constitute the offense. However sound this interpretation of the section may be, the demurrer to the indictment must nevertheless be overruled. The indictment is in the words of the statute, and is sufficiently definite to apprise the defendant of the offense with which he is charged. If it shall appear from the evidence that the defendant was not within the description of the statute as properly interpreted, that will be a matter of defense at the trial.

The demurrer having been overruled, the defendant filed a special plea to the two counts in the indictment. In substance, this plea admits that on the date named the defendant engaged in operating a motor vehicle in the public transportation of passengers for hire over a definite route on Fayette street, between Howard street and East street, in Baltimore City; but that the motor vehicle was operated without any time schedule as to the time of arrival at or departure from termini, or the time consumed in any trip, or the number of trips on any particular day.

To this plea the State has demurred. The defendant claims that under the law it is optional with the owner of a motor vehicle used in the public transportation of passengers for hire upon the highways of the State, to operate it either upon a fixed route and schedule, in which case the provisions of Chapter 610, Section 1, apply, or without such route or schedule; that if he elects to operate either without a route or without a schedule, the provisions of Chapter 687, Section 141, Subsection F, apply; and he alleges that he has

chosen to operate the vehicle without a fixed schedule in conformity with the latter section. To support his position the defendant calls attention to the large number of taxicabs and other vehicles operating in the city, which he claims are aptly described in the words of Chapter 610, Section 1, as motor vehicles used in the public transportation of passengers for hire. It could not have been the legislative intent to require such vehicles to adopt a fixed route or schedule, for to do so would destroy a useful means of conveyance suited to the public convenience. Section 1 of Chapter 610, therefore, manifestly does not cover all public vehicles, but must be limited in application to such as are devoted by their owners to fixed routes and schedules. Otherwise, Chapter 687, Section 141, Subsection F, would be meaningless, and there would remain no vehicles used in the transportation of persons for hire subject to its operation.

On the other hand, the contention of the State is that by the true interpretation of Section 1 of Chapter 610 of the Acts of 1916, all motor vehicles used in the public transportation of passengers for hire must operate only over specified routes and upon fixed schedules; that it was the express purpose of the law (see Section 4 of Chapter 610) to bring all such vehicles under the supervision of the Public Service Commission of Maryland and to forbid any of them to operate until the Commission had had an opportunity to investigate the feasibility of granting a permit, and to ascertain whether in its judgment it was best for the public welfare and convenience that the permit should be granted. Great stress is laid upon the large number of "jitney" busses that are operating in the City of Baltimore, and the wisdom and necessity of careful regulation in the interest of the public, and it is contended that the legislature had these facts in mind and intended to forbid the operation of all such vehicles except upon fixed routes and schedules regulated and approved by the Public Service Commission.

It is conceded that both of the laws must stand if it is possible to discover a reasonable construction which will harmonize them, and assign to each an exclusive field of application. This may be done, the defendant thinks, by permitting the owner of each motor vehicle used in the public transportation of passengers for hire to decide whether or not he will adopt a fixed route and schedule and submit the operation of his vehicle to the regulation of the Public Service Commission. This interpretation furnishes a clear line of division between the two laws, which at first sight does not seem to offend the express provisions of either of them. But the practical results which would flow from this conclusion are not such as the legislature could possibly have intended. The great number, the activity of motor busses upon the streets of the City of Baltimore and the highways of the State are matters of common knowledge. It is manifestly to the public interest that as common carriers they be subjected to control and regulation by some governmental agency; and it is obvious that such a design was in the legislative mind, when by Chapter 610 the Public Service Commission was empowered to inquire with regard to public welfare and convenience into the feasibility of routes and schedules and the number of vehicles to be operated upon the highways of the state. This salutary purpose would be in large measure defeated or impaired, if owners of public vehicles could avoid all supervision by failing to adopt either fixed routes or fixed schedules. Slight deviations of route or irregularities of schedule would make the enforcement of the law difficult or impossible, while the material benefits of a regular route and schedule would remain unimpaired.

It is not necessary to adopt this conclusion. A closer reading of Chapter 610, Section 1, furnishes the guiding principle of classification and distinguishes vehicles to which it relates from those covered by the terms of Section F of Section 141 of Chapter 687. The former act refers to motor vehicles used in the *public* transportation of passengers for hire; the latter to motor vehicles transporting persons for hire. Emphasis is to be placed upon the expression "*public* transportation." It may be argued that a taxicab or similar vehicle offered for hire to the general public is used in the *public* transportation of passengers for hire. But upon closer examination it is obvious that the phrase does not aptly or correctly describe the operation or service of a taxicab, which in a real sense becomes a private vehicle closed

to the transportation of passengers as soon as hired or engaged by the individual customer. On the other hand, the description fits to a nicety the operation of a motor bus, traversing the streets of the city transporting *passengers*, into which any person may enter as a passenger so long as there is vacant space. Ordinarily, if not always, vehicles of this character are operated upon a specified route upon busy and much-traveled thoroughfares and so far as possible upon a fixed schedule. The nature of the business requires it. The provisions of the act requiring the announcement of intended routes and schedules, and adherence thereto when adopted and approved, and the submission of the whole business to the regulation of the Public Service Commission, are neither unreasonable nor arbitrary. The fees to be paid under Chapter 610 are fixed in part at so much "per each passenger seat" in the vehicle, and this phrase is an additional indication of the public character of the transportation.

The special plea of the defendant raises the question whether a motor vehicle used in public transportation of passengers for hire upon a fixed route, but without a fixed schedule, is subject to the provisions of Chapter 610. The attention of the Court has been drawn to the terms of Chapter 687, Section 141, Subsection F, which prescribe the fee to be paid by "motor vehicles operating for the purpose of transporting persons for hire upon any of the public highways of the State other than motor vehicles operating on *fixed schedules*, the registration fees of which are fixed by other specific provisions of law." It is argued that this section applies to all such vehicles, whether they have a fixed route or not. But it is obvious that the "other specific provisions of law" referred to are the provisions of Chapter 610. The vehicles designated as excepted from Class F are somewhat loosely described as not operating on fixed schedules, whereas Chapter 610 requires both routes and schedules, but the description is one of reference only and is sufficiently accurate for the purpose. Similar inaccuracies or omissions are found in Chapter 610. Section 2 forbids an owner to change schedule or route once authorized without a permit of the Public Service Commission

to be sent to the Motor Vehicle Commissioner before said schedule is changed, meaning before said schedule or route is changed. Section 4, in describing the duty of the Public Service Commission upon the application of an owner to operate upon a specified route makes no mention of the schedule. But it is clear, when all the sections of Chapter 610 are considered together, that the legislature intended that no motor vehicle used in the public transportation of passengers for hire should be operated on the public highways without both a route and schedule approved by the Public Service Commission, and no such vehicle can escape the application of the law by failing to adopt either a schedule or a route.

The special plea of the defendant, therefore, describes the sort of vehicle intended to be covered by the provisions of Chapter 610, and the demurrer to the plea must be sustained, since it offers no defense to the indictment.